**21-2187**

# BRIEF OF APPELLANT

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

**RAMON E. ROANE,**

Claimant-Appellant

**v.**

**DENIS R. MCDONOUGH,**
SECRETARY OF VETERANS AFFAIRS

Respondent-Appellee

APPEAL FROM
THE UNITED STATES COURT OF APPEALF FOR VETERAN CLAIMS
IN 20-3293, Judge Amanda L. Meredith

**Kenneth H. Dojaquez, Esq.**
**Carpenter Chartered**
**P. O. Box 2099**
**Topeka, KS 66601**
**Email:Kenny@carpenterchartered.com**
**Attorney for Appellant**

**December 30, 2021**

# CERTIFICATE OF INTEREST

Pursuant to Federal Circuit Rules 28(a)(1) and 47.4, counsel for appellant certifies the following:

1. The full name of every party or amicus represented by me is:

   Ramon E. Roane.

2. The name of the real party in interest, if different than that above is:

   None.

3. The parent companies, subsidiaries, and affiliates that have issued shares to the public, of the party or amicus curiae represented by me are:

   None.

4. The name of all law firms and the partners or associates that appeared for the party now represented by me expected to appeal in this Court are:

   Michael S. Just.

5. The title and number of any cases known to counsel to be pending in this or any other court that will directly affect or be directly affected by this court's decision in the pending appeal:

   None.

6. Provide any information required under Fed. R. App. P. 26.1(b) and 26.1(c). Fed. Cir. R. 47.4(a)(6).

   None.

December 30, 2021 — /s/ Kenneth H. Dojaquez
Date — Kenneth H. Dojaquez

# Table of Contents

Page

Certificate of Interest ........ i

Table of Contents ........ ii

Table of Authorities ........ iv

Statement of Related Cases ........ 1

Jurisdictional Statement ........ 1

Statement of the Issues ........ 2

Statement of the Case ........ 2

Nature of the Case ........ 2

Statement of Facts ........ 2

Summary of the Argument ........ 5

Argument ........ 6

1. Standard of review ........ 6
2. The decision of the Veterans Court relies upon a misinterpretation of the provisions of 38 U.S.C. § 5107(b) and 38 C.F.R. § 3.102 concerning how the Board is to determine whether Mr. Roane was entitled to the benefit of the doubt. ........ 6

3. The Veterans Court impermissibly narrowed its appellate review of the Board decision on appeal by failing to apply the provisions of 38 U.S.C. § 7261(b)(1)........ 19

Conclusion........ 25

Certificate of Compliance........ 27

# Table of Authorities

**CASES:** **Brief Page:**

*Abramski v. United States*, 573 U.S. 169, 179 (2014) .......... 10
*B.O. (Rudisill) v. Wilkie*, 31 Vet. App. 321, 329, 345 (2019) .......... 12
*Barrett v. Principi*, 363 F.3d 1316, 1320 (Fed. Cir. 2004) .......... 9
*Boone v. Lightner*, 319 U.S. 561, 575 (1943) .......... 8
*Brown v. Gardner*, 513 U.S. 115, 118 (1994) .......... 11
*Changzhou Trina Solar Energy Co. v. United States*, 975 F.3d 1318, 1326 (Fed. Cir. 2020) .......... 7
*Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837, 843 (1984) .......... 6-7
*Conway v. Principi*, 353 F.3d 1369 (Fed Cir 2004) .......... 21
*Cook v. Snyder*, 28 Vet. App. 330, 344–45 (2017) .......... 12
*Cook v. Wilkie*, 908 F.3d 813, 817–18 (Fed. Cir. 2018) .......... 12
*Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 486 (2006) .......... 10
*FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132 (2000) .......... 10
*Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275, 285 (1946) .......... 8
*Gilbert v. Derwinski*, 1 Vet. App. 49 (1990) .......... 15-16
*Gundy v. United States*, 139 S. Ct. 2116, 2126 (2019) .......... 10
*Harris v. West*, 203 F.3d 1347, 1350 (Fed. Cir. 2000) .......... 20
*Henderson ex rel. Henderson* v. *Shinseki*, 562 U.S. 428, 440-441 (2011) .......... 8
*Henderson v. Shinseki*, 131 S. Ct. 1197 (2011) .......... 23
*Hodge v. West*, 155 F.3d 1356, 1363 (Fed. Cir. 1998) .......... 9
*King v. St. Vincent's Hosp.*, 502 U.S. 215, 220 n.9 (1991) .......... 11
*Kisor v. McDonough*, 995 F.3d 1316, 1336–38 (Fed. Cir. 2021) .......... 11
*Kisor v. McDonough*, 995 F.3d 1347, 1366–69 (Fed. Cir. 2021) .......... 11
*Kisor v. Wilkie*, 139 S. Ct. 2400, 2415, 2417 (2019) .......... *in passim*
*Lynch v. McDonough*, No. 2020-2067, 2021 WL 5983923, at 3 (Fed. Cir. Dec. 17, 2021) .......... 13, 16
*Mariano v. Principi*, 17 Vet.App. 305 (2003) .......... 20, 22
*Pauley v. BethEnergy Mines, Inc.*, 501 U.S. 680, 696 (1991) .......... 8
*Prenzler v. Derwinski*, 928 F.2d 392 (Fed. Cir. 1991) .......... 6
*Procopio v. Wilkie*, 913 F.3d 1371, 1383–84 (Fed. Cir. 2019) .......... 11
*Roberson v. Principi*, 17 Vet.App. 135 (2003) .......... 20, 22
*Roby v. McDonough*, ___ Fed. Appx. ___, 2021 WL 3378834, at *8 (Fed. Cir. Aug. 4) .......... 12
*Shinseki v. Sanders*, 129 S. Ct. 1696 (2009) .......... 22
*Shinseki v. Sanders*, 556 U.S. 396, 412 (2009) .......... 9

*Skidmore v. Swift & Co.*, 323 U.S. 134 (1944) .......... 12
*Tadlock v. McDonough*, 5 F.4th 1327, 1337 (Fed. Cir. 2021) .......... 9
*Trafter v. Shinseki*, 26 Vet. App. 267, 272 (2013) .......... 11
*United States v. Oregon*, 366 U.S. 643, 647 (1961) .......... 9
*Wells v. Principi*, 18 Vet.App. 33 (2004) .......... 20, 22

**STATUTES:**

38 U.S.C. § 5107(b) .......... *in passim*
38 U.S.C. § 7104(d)(1) .......... *in passim*
38 U.S.C. § 7252(b) .......... 20-21
38 U.S.C. § 7261 .......... 16
38 U.S.C. § 7261(a) .......... 21-24
38 U.S.C. § 7261(b) .......... 19-20, 24
38 U.S.C. § 7261(b)(1) .......... *in passim*
38 U.S.C. § 7261(b)(2) .......... 21-22
38 U.S.C. § 7292(d)(1) .......... 6
38 U.S.C. § 7292(e)(1) .......... 6
38 U.S.C.A. §§ 7292(a), (c) .......... 1

**REGULATIONS:**

38 C.F.R. § 3.102 .......... *in passim*

**OTHER:**

Caleb Nelson, *What Is Textualism*, 91 Va. L. Rev. 347, 394 n.140 (2005) .......... 10
James D. Ridgway, *Toward A Less Adversarial Relationship Between* Chevron *and* Gardner, 9 U. Mass. L. Rev. 388, 408 (2014) .......... 9
Pub. L. 107–330, title IV, § 401(a), (b), Dec. 6, 2002, 116 Stat. 2832 .......... 20

## Statement of Related Cases

Pursuant to Fed. Cir. R. 47.5, counsel for Appellant states that there have been no other appeals in this case, and that there are no related cases pending before this Court that would directly affect this Court's decision in this matter.

Counsel is unaware of any cases currently pending before the Veterans Court or this Court that will be directly affected by this Court's decision in this appeal.

## Jurisdictional Statement

On April 19, 2021, the Veterans Court issued a Memorandum Decision that affirmed the decision of the Board of Veterans' Appeals ("Board") dated April 13, 2020. On July 9, 2021, Mr. Roane timely appealed the Veterans Court decision to this Court. This Court has jurisdiction to review this decision pursuant to 38 U.S.C.A. §§ 7292(a), (c). The issues on appeal are entirely issues of law. The Veterans Court decision appealed from is final.

## Statement of the Issues

1. **How does a VA adjudicator, to include the Board, determine whether the evidence of record is in an "approximate balance" of the positive and negative evidence?**

2. **Whether the Veterans Court erred as a matter of law when it failed to take due account of the Board's application of 38 U.S.C. § 5107(b).**

## Statement of the Case

Nature of case

This appeal presents two questions of statutory interpretation. The first requires an interpretation of 38 U.S.C. § 5107(b) as it relates to how the Board is to determine whether the evidence of record is in an "approximate balance" of the positive and negative evidence. The second question requires an interpretation of 38 U.S.C. § 7261(b)(1) and whether the unambiguous language used by Congress requires the Veterans Court to independently take due account of the Board's application of 38 U.S.C. § 5107(b).

Statement of Facts, Course of proceedings and disposition below

Mr. Roane served on active duty from August 1981 to March 1991. Appx201-202[1]. VA, in a November 2017 rating decision, denied Mr. Roane entitlement to a total rating based on individual unemployability (TDIU). Appx121-127. Mr. Roane initiated an appeal in the legacy system by filing a notice of disagreement in March 2018. Appx119-120. VA issued a statement of the case in April 2019. Appx57-115. The following month, he elected to participate in and opted into the RAMP program. Appx56.

The relevant evidence of record included a VA lumbar spine examination conducted in January 2012. Appx191-200. The VA examiner opined that Mr. Roane was unable to sit for more than 30 minutes. Appx199. A December 2013 VA Vocational Counseling Report is also of record. Appx186-190. The VA vocational expert opined that Mr. Roane's service-connected disabilities "significantly impair his ability to prepare for, obtain and/or retain employment." Appx188. The VA vocational expert explained that "Because of these [service-connected] conditions he is unable to stand from a seated position regularly, stand or walk for prolonged time, lift, bend, squat, stoop, or work overhead." Appx188. This expert further opined that Mr. Roane's service-connected

---

[1] References to the Joint Appendix to be filed by the Appellant with his reply brief will be cited as "Appx___ ."

disabilities "contribute in substantial part to the vocational impairment and Mr. Roane had not overcome the effects of the impairment through further education, transferable skills, or obtaining and maintaining suitable work." *Id*.

A VA examination of the Veteran's knees and lower extremities took place in April 2016. Appx168-185. The VA examiner opined that Mr. Roane had difficulty with prolonged sitting, standing or walking and was unable to sit for more than 60 minutes. Appx170, 179, 185. Another VA spine examination was conducted in June 2016. Appx158-167. This VA examiner stated that Mr. Roane experienced decreased mobility, problems with sitting and problems with changing positions. Appx159. The examiner opined that Mr. Roane's back disability impacted his ability to work because he was "unable to sit or stand for extended periods" and was unable to bend. Appx167.

Another VA spine examination took place in August 2017. Appx128-140. This VA examiner opined that Mr. Roane's ability to work was impacted due to pain with prolonged sitting, standing or lifting. Appx138. A VA examination of Mr. Roane's service connected knees and lower extremities took place that same month. Appx141-157. This VA examiner opined that Roane's ability to work was impacted due to pain with any activities involving prolonged sitting, standing or walking. Appx156.

In October 2018, Mr. Roane explained that due to his service-connected disabilities he experienced severe pain with sitting, pain and numbness in his legs, and was unable to keep his knees bent for sitting more than 30 to 45 minutes without severe pain. Appx116-118. In addition, the record included a private Vocational Assessment was provided in May 2019. Appx47-55. This expert opined that the Veteran's service-connected conditions caused difficulty with "prolonged sitting, standing, and walking that would affect his ability to perform any type of substantially gainful employment, even sedentary employment." Appx54. On April 13, 2020, the Board of Veterans Appeal issued the decision denying Mr. Roane a TDIU rating. Appx30-46. Mr. Roane appealed to the Veterans Court.

## Summary of the Argument

This appeal concerns two aspects of the provisions of 38 U.S.C. § 5107(b), First, Mr. Roane asks this Court to determine whether the decision of the Veterans Court relied upon a misinterpretation of the provisions of 38 U.S.C. § 5107(b) and 38 C.F.R. § 3.102 concerning how the Board is to determine whether Mr. Roane was entitled to the benefit of the doubt. Second, this appeal asks this Court to determine whether the Veterans Court impermissibly narrowed its appellate review of the Board decision on appeal by failing to apply the provisions

of 38 U.S.C. § 7261(b)(1). The answer to both questions directly affect the process by which claims are adjudicated before VA and the Board as well as the judicial review of the denial of those claims.

## Argument

**1. Standard of Review.** This Court may decide all relevant questions of law in an appeal from a decision by the Veterans Court. 38 U.S.C. § 7292(d)(1). This Court reviews legal determinations of the Veterans Court *de novo*. *Prenzler v. Derwinski*, 928 F.2d 392, 393 (Fed. Cir. 1991). In doing so, this Court may "affirm or if the decision of the Court of Appeals for Veterans Claims is not in accordance with law, . . . modify or reverse the decision of the Court of Appeals for Veterans Claims or . . . remand the matter as appropriate." 38 U.S.C. § 7292(e)(1).

2. **The decision of the Veterans Court relies upon a misinterpretation of the provisions of 38 U.S.C. § 5107(b) and 38 C.F.R. § 3.102 concerning how the Board is to determine whether Mr. Roane was entitled to the benefit of the doubt.**

When interpreting a statute, including 38 U.S.C. §§ 5107(b) & 7104(d)(1), this Court "must give effect to the unambiguously expressed intent of Congress." *Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837, 843 (1984). It first must determine

whether Congress' intent is unambiguous. To do so, it must examine the statutory language at issue, that language's ordinary meaning, the language's context in the statute and the overall statutory scheme, the traditional canons that guide how to construe statutes to discern Congress' intent, and the pertinent legislative history. *See, e.g.*, *Changzhou Trina Solar Energy Co. v. United States*, 975 F.3d 1318, 1326 (Fed. Cir. 2020). If only one reasonable conclusion emerges from this analysis as to what Congress intends, then Congress' intent is unambiguous; and "that is the end of the matter." *Chevron*, 467 U.S. at 842.

If at least two reasonable conclusions emerge as to what Congress intends, then there is interpretive doubt to resolve. The Court must resolve any such doubt in Mr. Roane's favor. It bears highlighting at this issue's outset that, in *Kisor v. Wilkie*, the Supreme Court held that "a court must exhaust all the 'traditional tools' of construction" before "concluding that a rule is genuinely ambiguous" such that principles of agency deference may apply. 139 S. Ct. 2400, 2415 (2019) (quoting *Chevron*, 467 U.S. at 843 n.9); *see also id.* at 2414 ("[T]he possibility of deference can arise only if a regulation is genuinely ambiguous * * * even after a court has resorted to all the standard tools of interpretation."); *id.* at 2423 ("We have insisted that a court bring all its interpretive tools to bear before" deferring to an agency's interpretation).

As the Supreme Court has explained, "the core theory of [agency] deference is that sometimes the law runs out, and policy-laden choice is what is left over." *Kisor*, 139 S. Ct. at 2415. That is why all other interpretive tools must be exhausted before turning to principles of deference: "[O]nly when that legal toolkit is empty and the interpretive question still has no single right answer can a judge conclude that it is 'more [one] of policy than of law.'" *Id.* (quoting *Pauley v. BethEnergy Mines, Inc.*, 501 U.S. 680, 696 (1991)). That is equally true for matters of regulatory interpretation such as what was at issue in *Kisor* and matters of statutory interpretation such as the scope of § 7104(d)(1)'s requirements.

The Supreme Court, meanwhile, long has described this pro-veteran canon as one of the "traditional tools of construction" that courts must consider before potentially deferring to an agency's interpretation of law. *See, e.g.*, *Henderson ex rel. Henderson* v. *Shinseki*, 562 U.S. 428, 441 (2011) ("We have long applied the canon that provisions for benefits to members of the Armed Services are to be construed in the beneficiaries' favor.") (quotation marks omitted). Indeed, the canon dates back nearly a century. *See Boone v. Lightner*, 319 U.S. 561, 575 (1943) ("The Soldiers' and Sailors' Civil Relief Act is always to be liberally construed to protect those who have been obliged to drop their own affairs to take up the burdens of the nation."); *Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275,

285 (1946) ("Our problem is to construe the separate provisions of the [Selective Service] Act as parts of an organic whole and give each as liberal a construction for the benefit of the veteran as a harmonious interplay of the separate provisions permits.").

Indeed, the pro-veteran canon is perhaps best understood as a presumption regarding Congress' intent. *See* James D. Ridgway, *Toward A Less Adversarial Relationship Between* Chevron *and* Gardner, 9 U. Mass. L. Rev. 388, 408 (2014) ("[T]he Supreme Court decided [its pro-veteran canon cases] upon the premise that Congress, knowing that it cannot resolve all issues ex ante, created the system with a residual intent that ambiguity be resolved in the favor of veterans."). In particular, the canon references Congress' longstanding "pattern of legislation" that effectuates Congress' special solicitude for veterans. *See, e.g.*, *Henderson*, 562 U.S. at 440 ("The solicitude of Congress for veterans is of long standing.") (quoting *United States v. Oregon*, 366 U.S. 643, 647 (1961)); *Shinseki v. Sanders*, 556 U.S. 396, 412 (2009) ("Congress has expressed special solicitude for the veterans' cause."); *see also, e.g.*, *Tadlock v. McDonough*, 5 F.4th 1327, 1337 (Fed. Cir. 2021); *Barrett v. Principi*, 363 F.3d 1316, 1320 (Fed. Cir. 2004); *Hodge v. West*, 155 F.3d 1356, 1363 (Fed. Cir. 1998).

In other words, the pro-veteran canon is a tool for illuminating the context and purpose of a veteran's benefit statute—factors that the Supreme Court has both required courts generally to evaluate as part of their textual analysis and instructed federal courts to consider. *See Kisor*, 136 S. Ct. at 2423–24; *Abramski v. United States*, 573 U.S. 169, 179 (2014) ("[W]e must (as usual) interpret the relevant words not in a vacuum, but with reference to the statutory context, structure, history, and purpose.") (quotation marks omitted); *cf.* Caleb Nelson, *What Is Textualism*, 91 Va. L. Rev. 347, 394 n.140 (2005) ("[M]any 'substantive' canons (such as those that reflect Congress's established patterns of behavior) help interpreters discern likely legislative intent, and hence can be seen as 'descriptive' rather than 'normative.'").[1]

What is more, the Supreme Court has explained that the pro-veteran canon is a background principle upon which Congress is understood to legislate.

[1] *Accord, e.g.*, *Gundy v. United States*, 139 S. Ct. 2116, 2126 (2019) (Kagan, J., plurality op.) ("[S]tatutory interpretation [is] a 'holistic endeavor' which determines meaning by looking not to isolated words, but to text in context, along with purpose and history."); *Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 486 (2006) ("Interpretation of a word or phrase depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis."); *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132 (2000) ("The meaning—or ambiguity—of certain words or phrases may only become evident when placed into context.").

*King v. St. Vincent's Hosp.*, 502 U.S. 215, 220 n.9 (1991) ("We will presume congressional understanding of * * * interpretive principles" such as "the canon that provisions for benefits to members of the Armed Services are to be construed in the beneficiaries' favor."). For this reason, too, it appropriately plays a part in textual analysis. Antonin Scalia & Bryan A. Garner, *Reading Law* 31 (2012) ("A traditional and hence anticipated rule of interpretation, no less than a traditional and hence anticipated meaning of a word, imparts meaning.").

As courts repeatedly have held, then, they must resolve interpretative doubt in the veteran's favor. *See, e.g.*, *Brown v. Gardner*, 513 U.S. 115, 118 (1994) ("[I]nterpretive doubt is to be resolved in the veteran's favor"); *King*, 502 U.S. at 220 n.9; *Henderson*, 562 U.S. at 441; *see also*, *e.g.*, *Trafter v. Shinseki*, 26 Vet. App. 267, 272 (2013); *Procopio v. Wilkie*, 913 F.3d 1371, 1383–84 (Fed. Cir. 2019) (en banc) (O'Malley, J., concurring); *Kisor v. McDonough*, 995 F.3d 1316, 1336–38 (Fed. Cir. 2021) (Reyna, J., dissenting); *Kisor v. McDonough*, 995 F.3d 1347, 1366–69 (Fed. Cir. 2021) (O'Malley, J., dissenting from den'l of reh'g en banc).

This conclusion is true irrespective of whether the Court approaches the pro-veteran canon as a traditional tool of construction or, instead, as applying only after "*Chevron* Step One" analysis. If the latter, the strongest understanding of the pro-veteran canon would be as reflecting Congress' policy choice, in this

uniquely pro-claimant system, against permitting the Secretary to resolve any interpretive doubt against a U.S. military veteran. The canon, even if viewed in this light, thus still enforces Congress' intent to cabin the scope of rulemaking and interpretive authority that it delegates to the Secretary—or, at a minimum, the knowledge and expertise that Congress has charged the Secretary to develop. Accordingly, even if applying after *Chevron* Step One, the pro-veteran canon must apply *immediately* after *Chevron* Step One to preclude deference to any interpretation by the Secretary that would not resolve interpretive doubt in the veteran's favor. *See Kisor v. Wilkie*, 139 S. Ct. at 2417. *But see Roby v. McDonough*, ___ Fed. Appx. ___, 2021 WL 3378834, at *8 (Fed. Cir. Aug. 4) ("This court has not definitively resolved at what stage the pro-veteran canon applies and whether it precedes any claims of deference to an agency interpretation."); *but see also Cook v. Snyder*, 28 Vet. App. 330, 344–45 (2017) (analyzing the pro-veteran canon only after addressing *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944), analysis), *overruled in predicate part*, *Cook v. Wilkie*, 908 F.3d 813, 817–18 (Fed. Cir. 2018) (holding the statute at issue to be unambiguous); *B.O. (Rudisill) v. Wilkie*, 31 Vet. App. 321, 329, 345 (2019) (following *Cook v. Snyder*'s approach in *dictum*).

Accordingly, whether the pro-veteran canon applies as a traditional tool of construction or to enforce Congress' policy choice against delegating authority to

permit the Secretary to resolve any interpretive doubt adversely to a veteran, this Court ultimately must resolve any interpretive doubt of law in Mr. Roane's favor. That, then, becomes the end of the matter.

Mr. Roane, before the Veterans Court, asked that court to determine whether the Board had committed prejudicial legal error when it denied him a TDIU rating under the provisions of 38 C.F.R. § 3.102 and 38 U.S.C. § 5107(b). Appx11-29. Both the regulation and the statute required that the Board determine whether there was an approximate balance of positive and negative evidence. Unfortunately, neither describes how a VA adjudicator in the first instance, or the Board in a *de novo* review, is to determine whether a claimant will be afford the benefit of the doubt. What is clear is that if the positive and negative evidence is in approximate balance (which includes but is not limited to equipoise), the claimant must receive the benefit of the doubt. *Lynch v. McDonough*, No. 2020-2067, 2021 WL 5983923, at 3 (Fed. Cir. Dec. 17, 2021).

This Court in its recent *en banc* decision also made clear that when the evidence is not in "approximate balance" or "nearly equal," then the benefit-of-the-doubt rule does not apply when the evidence **persuasively favors one side or the other**. *Lynch*, at 4. (Emphasis added). However, this Court's decision in *Lynch* does not answer the question posed by Mr. Roane's appeal.

Prior to the enactment of the provisions of 38 U.S.C. § 5107(b), the Secretary by regulation provided:

> **<u>It is the defined and consistently applied policy of the Department of Veterans Affairs to administer the law under a broad interpretation, consistent, however, with the facts shown in every case</u>**. When, after careful consideration of all procurable and assembled data, a reasonable doubt arises regarding service origin, the degree of disability, or any other point, such doubt will be resolved in favor of the claimant. **<u>By reasonable doubt is meant one which exists because of an approximate balance of positive and negative evidence which does not satisfactorily prove or disprove the claim</u>**. It is a substantial doubt and one within the range of probability as distinguished from pure speculation or remote possibility. It is not a means of reconciling actual conflict or a contradiction in the evidence. Mere suspicion or doubt as to the truth of any statements submitted, as distinguished from impeachment or contradiction by evidence or known facts, is not justifiable basis for denying the application of the reasonable doubt doctrine if the entire, complete record otherwise warrants invoking this doctrine. The reasonable doubt doctrine is also applicable even in the absence of official records, particularly if the basic incident allegedly arose under combat, or similarly strenuous conditions, and is consistent with the probable results of such known hardships.

38 C.F.R. § 3.102. (Emphasis added). It follows then that when Congress codified § 3.102 Congress intended that the benefit of the doubt rule would continue to be "the defined and consistently applied policy of the Department of Veterans Affairs to administer the law under a broad interpretation, consistent, however, with the facts shown in every case."

Further, it is apparent from Congress' use of the words "an approximate balance of positive and negative evidence" – which it incorporated into § 5107(b) – that Congress intended that claims would be decided by VA and the Board after a determination of what evidence of record was positive, meaning in support of "any issue material to the determination of a matter," and what evidence of record was negative, meaning which did not satisfactorily prove the claim.

In *Gilbert v. Derwinski*, 1 Vet. App. 49 (1990), the Veterans Court characterized this as being a unique standard of proof - the "benefit of the doubt"- which applies only in decisions involving claims for veteran's benefits. *Gilbert*, 1 Vet. App. at 53. The Veterans Court continued that the "benefit of the doubt" standard, which is at the farthest end of the spectrum of the various standards of proof in American legal jurisprudence, was enacted by Congress "in keeping with the high esteem in which our nations holds those who have served in the Armed Serves." *Id.* Citing to 38 U.S.C. § 5107(b).

The Veterans Court concluded that the "benefit of the doubt" standard applied when the positive and negative evidence regarding the merits of a veteran's claim for benefits are in approximate balance. *Id.* When such equipoise exists, the veteran must prevail on the merits of his claim. *Gilbert*, 1 Vet. App. at 53-56. Therefore, a veteran need only demonstrate that there is an approximate

balance of positive and negative evidence in order to prevail on his claim. *Id.* The Veterans Court did not acknowledge or address, as this Court has now done, that when the evidence is not in "approximate balance" or "nearly equal," that the benefit-of-the-doubt rule does not apply only when the evidence persuasively favors one side or the other. *Lynch*, at 4. Instead, the holding in *Gilbert* is limited to the rule of law that **if** there is an approximate balance of positive and negative evidence a claimant must prevail.

In this case, the issue is more nuanced requiring this Court to address how the Board and VA adjudicators in the first instance will make the determination that evidence of record is either positive or negative. In addition to making this determination, this case requires this Court to address how Congress intended the Board to fully explain this determination, under 38 U.S.C. § 7104(d)(1), so that the claimant knows why, but more importantly judicial review can occur under 38 U.S.C. § 7261. Without such guidance a reviewing court is unable to determine whether evidence was either persuasively positive or negative.

The evidence of record in this matter makes this point obvious. Nothing in the Board's decision identified the evidence of record as being either positive or negative. Furthermore, nothing in the Board's decision explain why the Board found any evidence either positive or negative. Without such characterization or

identification by the Board of whether the evidence is positive or negative and why, then a reviewing court is unable to determine if the Board correctly decided not to afford the benefit of the doubt to Mr. Roane.

It is critical to the integrity of VA and Board decision making that this Court interpret the plain language of § 5107(b) to require that VA adjudicators, to include the Board, if they are not going to afford a claimant the benefit of the doubt on "any issue material to the determination of a matter," must first identify what evidence of record is positive and what evidence of record it identifies as negative and why. After all, Congress requires the Board to provide "a written statement of the Board's findings and conclusions, and the reasons or bases for those findings and conclusions, **on all material issues** of fact and law presented on the record …." 38 U.S.C. § 7104(d)(1). (Emphasis added).

Interpreting § 5107(b) to require VA adjudicators to: 1) identify which evidence is positive or negative; 2) explain why with adequate reasons and bases; and 3) explain why the benefit of the doubt was not afforded, injects confidence in VA decision making and judicial review of that decision making. Furthermore, as explained below, the Veterans Court is charged by Congress to "take due account of the Secretary's application of section 5107(b)." *See* 38 U.S.C. § 7261(b)(1). Without a legal requirement to identify the positive and negative

evidence, and to explain why the Board found such evidence positive or negative, the Veterans Court is unable to review the Board's decisions.

The judgment of the Veterans Court, as shown by the following, demonstrates why the interpretation urged by Mr. Roane is required:

> . . . the Board in this case summarized the evidence of record, determined that the appellant, despite his physical limitations, is not precluded from all forms of substantially gainful employment consistent with his education, intellectual skills, and experience, and explained its reasons for discounting the 2019 vocational counselor's favorable opinion to the contrary.

Appx6-7. Here the Veterans Court relied upon a misinterpretation of the plain language of § 5107(b) which is predicated on the need for the identification of evidence as either positive or negative which was not done by the Board. Instead, as the Veterans Court noted, the Board summarized the evidence of record. It did not categorize the evidence as either positive or negative; and, at least in Mr. Roane's view, provided arbitrary conclusions. Conclusions which could have as easily been the opposite.

What the Board did and the Veterans Court affirmed was not based upon an assessment of the evidence of record as either positive or negative. Instead, the Board made an unsubstantiated conclusion that the preponderance of the evidence is against the claim. This is not the test under the correct interpretation of § 5107(b). The test under § 5107(b) must be interpreted by this

Court to require that the Board identify what evidence is positive and why and what evidence is negative and why. Then, § 5107(b) requires the Board to explain, with adequate reasons and bases, whether there is an approximate balance of that evidence, or whether the evidence persuasively favors one side or the other.

3. **The Veterans Court impermissibly narrowed its appellate review of the Board decision on appeal by failing to apply the provisions of 38 U.S.C. § 7261(b)(1).**

The Veterans Court summarily stated in the decision on appeal:

> . . . the Court is not persuaded that the Board misapplied the benefit of the doubt or failed to support its conclusion that the preponderance of the evidence is against the claim. Appellant's Br. at 12-13.

Appx6. This summary rejection of Mr. Roane's averment of error is likely immune from review by this Court as an application of law to fact. And, Mr. Roane does not assert otherwise. Instead, this appeal presents a question of statutory interpretation – what does Congress require from the Veterans Court when it amended the provisions of 38 U.S.C. § 7261(b) to unambiguously require that the Veterans Court take due account of the Secretary's application of the provisions of 38 U.S.C. § 5107(b).

Congress in 2002 amended the provisions of 38 U.S.C. § 7261(b) to expressly provide:

> In making the determinations under subsection (a), the Court shall review the record of proceedings before the Secretary and the Board of Veterans' Appeals pursuant to section 7252(b) of this title and shall—
>
> (1) take due account of the Secretary's application of section 5107(b) of this title; . . ..

Pub. L. 107–330, title IV, § 401(a), (b), Dec. 6, 2002, 116 Stat. 2832. This statutory provision has not been interpreted by this Court. It has been interpreted by the Veterans Court in *Roberson v. Principi*, 17 Vet.App. 135 (2003) and *Mariano v. Principi*, 17 Vet.App. 305 (2003). Neither purported interpretation is binding by this Court. *See Harris v. West*, 203 F.3d 1347, 1350 (Fed. Cir. 2000).

The following year, the Veterans Court obliquely addressed its obligation under § 7261(b)(1) in dissents to the denial of full Court consideration in *Wells v. Principi*, 18 Vet.App. 33 (2004). Neither of the precedential decisions of the Veterans Court in *Roberson* or *Mariano* provide a clear statement of precisely what the Veterans Court is required to do when it takes due account of the Secretary's application of the provisions of § 5107(b). Mr. Roane asks that this Court to do so in this matter.

Mr. Roane submits that is undebatable that Congress has expressly imposed upon the Veterans Court the obligation to review the record of proceedings

before the Secretary and the Board in accordance with its mandate to this Court under 38 U.S.C. § 7252(b). It is equally undebatable that Congress in 2002 expressly imposed upon the Veterans Court the obligation to take due account of the Secretary's application of § 5107(b) under the unambiguous language of § 7261(b)(1). This obligation is independent of the obligation of the Veterans Court to review under 38 U.S.C. § 7261(a).

The review by the Veterans Court for clear error in decisions of the Board under § 7261(a) is not the end of its statutory obligation. This was confirmed by this Court's decision in *Conway v. Principi*, 353 F.3d 1369 (Fed Cir 2004) which held that there is no implicit exemption for VCAA's notice requirements from general statutory command that the Veterans Court shall "take due account of the rule of prejudicial error." In so holding this Court recognized that after judicial review by the Veterans Court under § 7261(a) Congress required more in the form of due account of the rule of prejudicial error. This Court explicitly held that:

> **Section 7261(b)(2) is plain on its face. It applies to all Veteran's Court proceedings**, and nothing in the VCAA even hints that Congress intended to exempt section 5103(a) from that general scheme.

*Conway*, 353 F.3d 1374. (Emphasis added). It follows then that since the provisions of 38 U.S.C. § 7261(b)(2) apply to **all Veteran's Court proceedings**

so too do the provisions of 38 U.S.C. § 7261(b)(1) apply to **all Veteran's Court proceedings.**

This being the case, then this Court must find as matter of law that the Veterans Court erred when it failed to take due account of the Secretary's application of § 5107(b). But that must not be the end of the matter. The Veterans Court has had twenty years to determine **how** it will take due account of the Secretary's application of § 5107(b). As is evidenced by its decisions in *Roberson*, *Mariano* and *Wells* there is no consensus in that court on its statutory obligation to take due account of the Secretary's application of § 5107(b). This is evident since that Court does not take due account of the Secretary's application of § 5107(b) even though it has been required to do so since 2002.

Mr. Roane interprets Congress's mandate under § 7261(b)(1) to require the Veterans Court to do as it does when taking due account of the rule of prejudicial error. That is, **after** it completes is review under § 7261(a) the Veterans Court must take due account of the rule of prejudicial error. If the Veterans Court finds clear error, it is required by § 7261(b)(2) to determine whether such an error of law was harmless by taking due account of the rule of prejudicial error. *See Shinseki v. Sanders*, 129 S. Ct. 1696 (2009). This Court should interpret §

7261(b)(1) to require the Veterans Court to also take due account of the Secretary's application of § 5107(b) **after** it completes is review under § 7261(a).

This Court must determine that to take due account of the Secretary's application of § 5107(b), the Veterans Court review must be nondeferential to the Board's application or the Secretary's application in the first instance. This determination is necessary because any review of the application of § 5107(b) is meaningless if deference is afforded. Likewise, a determination by this Court that the Veterans Court taking due account of the Secretary's application of § 5107(b) that is deferential would render such review here meaningless as well.

The Supreme Court in *Henderson v. Shinseki*, 131 S. Ct. 1197 (2011) explained that the rules and procedures of the veterans' benefits system differ sharply from the procedures of normal civil litigation, as:

> The contrast between ordinary civil litigation . . . and the system Congress created for veterans is dramatic. In ordinary civil litigation suits must generally be commenced within a specified limitations period; the litigation is adversarial; plaintiffs must gather the evidence supporting their claims and generally bear the burden of production and persuasion; both parties may appeal an adverse decision; and a final judgment may be reopened only in narrow circumstances. By contrast, a veteran need not file an initial benefits claim within any fixed period; the VA proceedings are informal and nonadversarial; and the VA assists veterans in developing their supporting evidence and must give them the benefit of any doubt in evaluating that evidence. A veteran who loses before the Board may obtain review in the Veterans Court, but a Board decision in the veteran's favor is final. And a veteran may reopen a claim simply by presenting new and material evidence.

*Henderson*, 131 S. Ct. at 1199. The unambiguous goal of Congress, as the Supreme Court noted, has been to "place a thumb on the scale in the veteran's favor **in the course of administrative and judicial review of VA decisions**." *See id.* (Emphasis added).

In order to place a thumb on the scale in the veteran's favor Congress codified 38 C.F.R. § 3.102 in its enactment of 38 U.S.C. § 5107(b). In 2002, to reinforce its codification of § 3.102 in § 5107(b), Congress amended § 7261(b) to require that the Veterans Court as part of its judicial review of decisions of the Board once again placed a thumb on the scale in the veteran's favor. This Court must not ignore the intent of Congress and ensure an additional and independent nondeferential review of the denial of VA benefits be incorporated into the judicial review by the Veterans Court.

Each subsection of § 7261(b) represents a counterpoint to the other. Subsection(b)(1) represents the intent of Congress to ensure that, even if the Veterans Court's review under § 7261(a) results in a finding of no clear error, § 7261(b)(1) acts as a final filter. As the final filter, the Veterans Court must be permitted as Congress intended to determine whether the Secretary in the first instance or the Board in its *de novo* review failed to properly take due account of the mandate of § 5107(b) to give claimants the benefit of the doubt regarding any

issue material to the determination of a matter and reverse the denial of benefits and order that the benefits be awarded. By taking due account of Secretary's application of § 5107(b), Congress charged the Veterans Court to ensure that every benefit which can be awarded to veterans and their dependents is awarded.

Thus, under the correct interpretation § 7261(b)(1) must be applied in every proceeding before the Veterans Court. In so doing, when it takes due account of the Secretary's application of the provisions of § 5107(b), the Veterans Court must determine whether the Board should, but did not afford the appellant the benefit of the doubt. Upon such a determination, the Veterans Court must reverse the Board's decision to the contrary.

## Conclusion

For the foregoing reasons, this Court should reverse the decision of the Veterans Court based upon its misinterpretation of 38 U.S.C. § 5107(b) and instruct the Veterans Court to direct the Board how to properly determine whether Mr. Roane was entitled to the benefit of the doubt. Additionally, this Court should reverse the decision of the Veterans Court based upon its impermissible narrowing of its appellate review of the Board decision on appeal by failing to consider and apply the provisions of 38 U.S.C. § 7261(b)(1). This

Court must order that the Veterans Court apply forthwith the provisions of § 7261(b)(1) in every proceeding before it.

Respectfully submitted,

/s/ Kenneth H. Dojaquez, Esq.

Kenneth H. Dojaquez, Esq.
Attorney for Appellant
Carpenter Chartered
P. O. Box 2099
Topeka, KS 6660

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that this brief complies with the type-volume limitation under Rule 32(a)(7)(B). This brief has been prepared in a proportionally spaced typeface using Microsoft Word, 14 point font. The word processing system used to prepare this brief records 5,798 words in this brief.

Respectfully submitted,

/s/ Kenneth H. Dojaquez, Esq.

______________________________________

Kenneth H. Dojaquez, Esq.
Attorney for Appellant
Carpenter Chartered
P. O. Box 2099
Topeka, KS 6660
Telephone: (785) 357-5251

*Not Published*

**UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS**

NO: 20-3293

RAMON E. ROANE, APPELLANT,

V.

DENIS MCDONOUGH,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

**JUDGMENT**

The Court has issued a decision in this case, and has acted on a motion under Rule 35 of the Court's Rules of Practice and Procedure.

Under Rule 36, judgment is entered and effective this date.

Dated: May 28, 2021

FOR THE COURT:

GREGORY O. BLOCK
Clerk of the Court

By: /s/ Anthony R. Wilson
Deputy Clerk

Copies to:

Kenneth H. Dojaquez, Esq.

VA General Counsel (027)

*Designated for electronic publication only*

**UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS**

No. 20-3293

RAMON E. ROANE, APPELLANT,

V.

DENIS MCDONOUGH,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

Before MEREDITH, *Judge*.

**MEMORANDUM DECISION**

*Note: Pursuant to U.S. Vet. App. R. 30(a), this action may not be cited as precedent.*

MEREDITH, *Judge*: The appellant, Ramon E. Roane, through counsel appeals an April 13, 2020, Board of Veterans' Appeals (Board) decision that denied a disability rating in excess of 40% for lumbosacral spine degenerative disk disease (DDD) with lumbar strain and entitlement to a total disability rating based on individual unemployability (TDIU). Record (R.) at 4-18. The appellant does not raise any argument concerning the Board's denial of a higher rating for his lumbar spine disability. Therefore, the Court finds that he has abandoned his appeal of this issue and will dismiss the appeal as to the abandoned issue. *See Pederson v. McDonald*, 27 Vet.App. 276, 285 (2015) (en banc). This appeal is timely, and the Court has jurisdiction to review the Board's decision pursuant to 38 U.S.C. §§ 7252(a) and 7266(a). Single-judge disposition is appropriate. *See Frankel v. Derwinski*, 1 Vet.App. 23, 25-26 (1990). For the following reasons, the Court will affirm the Board's decision denying entitlement to TDIU.

## I. BACKGROUND

The appellant served on active duty in the U.S. Navy from August 1981 to March 1991. R. at 2661, 2817. In December 2013, the appellant underwent vocational rehabilitation counseling; the counselor noted that the appellant's disabilities—paralysis of the sciatic nerve, degenerative

arthritis of the spine, and limited flexion of the knee—"significantly impair[ed] his ability to prepare for, obtain[,] and/or retain employment." R. at 529; *see* R. at 527-31. Specifically, the counselor noted that, as a result of the above disabilities, the appellant "is unable to stand from a seated position regularly, stand or walk for a prolonged time, lift, bend, squat, stoop, or work overhead." R. at 529.

The appellant filed a formal application for TDIU on August 17, 2017, and alleged that he was unable to secure or follow a substantially gainful occupation due to his service-connected back condition and bilateral lower extremity radiculopathy. R. at 962-64. At the time, he had a combined 70% disability rating for the following conditions: lumbosacral spine DDD with lumbar strain, chondromalacia of both knees, bilateral lower extremity radiculopathy, and residuals of a left knee scar. *See* R. at 451-52.

He underwent several VA examinations from April 2016 to February 2019 to evaluate his bilateral knee disabilities, bilateral radiculopathy, and lumbar spine condition. *See* R. at 240-49, 453-58, 586-98, 598-603, 993-1009, 1010-22, 1581-90. The examination reports reflect that his disabilities "impact" his ability to perform occupational tasks as a result of several limitations, which, as relevant here, the examiners variously recorded as follows: difficulty or pain with "prolonged" or "extended" sitting, R. at 588, 1008, 1020, 1590; an inability to sit for more than 60 to 120 minutes, R. at 598, 603; an inability to sit or stand for extended periods, R. at 1590; "[l]imited sitting, changing positions (sitting to standing)," R. at 1582; and an inability to sit for more than 1 hour, R. at 241. The appellant also submitted an affidavit in which he averred that, when sitting, "[he has] to be able to move around and stretch [his] legs." R. at 311. He explained that he "can[no]t keep [his] knees bent for more than 30 [to] 45 minutes without experiencing severe pain." *Id.*

In November 2017, a peripheral nerves examiner opined that, although the appellant's "bilateral lower extremity radiculopathy condition does render him unable to seek and maintain a substantially gainful physical type of employment. . . . [he] should be able to seek and maintain a substantially gainful light physical or sedentary type of employment." R. at 458. Later that month, a VA regional office (RO) denied entitlement to TDIU. R. at 448-49; *see* R. at 388-400, 446-52. The appellant disagreed with the decision, R. at 361-62, and ultimately opted into the modernized appeals system in which he elected the evidence submission option, R. at 59; *see* R. at 60-118.

The appellant underwent a private vocational assessment in May 2019 and submitted the counselor's report to the Board. R. at 37-45. The private counselor noted that the appellant's service-connected disabilities "affect[] his ability to perform work functions of prolonged sitting, standing, and walking[, which] would affect his ability to perform any type of substantially gainful employment, even sedentary employment within the general labor market." R. at 44. He concluded that the appellant had not been able "to secure or follow substantially gainful employment since 2012." *Id.*

On April 13, 2020, the Board denied entitlement to TDIU. R. at 5-16. This appeal followed.

## II. ANALYSIS

The appellant argues that the Board provided an inadequate statement of reasons or bases because it failed to reconcile its conclusion that he is capable of obtaining and maintaining substantially gainful "sedentary employment" with the "plethora of medical evidence demonstrating that [he] is precluded from sitting due to his service-connected disabilities." Appellant's Brief (Br.) at 4; *see id.* at 4-12; Reply Br. at 1-5. He further asserts that "the Board did not reconcile 'the concept of sedentary work' with [his] 'disability picture,'" Appellant's Br. at 7 (quoting *Withers v. Wilkie*, 30 Vet.App. 139, 147 (2018)), and that the Board failed to support its conclusion that the preponderance of the evidence is against the claim, *id.* at 12-13. The Secretary disputes these contentions and urges the Court to affirm the Board's decision. Secretary's Br. at 6-16.

TDIU may be assigned to a veteran who meets certain disability percentage thresholds and is "unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities." 38 C.F.R. § 4.16(a) (2020). An award of TDIU does not require a showing of 100% unemployability. *See Roberson v. Principi*, 251 F.3d 1378, 1385 (Fed. Cir. 2001). In determining whether a claimant is unable to secure or follow a substantially gainful occupation, the central inquiry is "whether th[e] veteran's service-connected disabilities alone are of sufficient severity to produce unemployability." *Hatlestad v. Brown*, 5 Vet.App. 524, 529 (1993); *see Van Hoose v. Brown*, 4 Vet.App. 361, 363 (1993) (explaining that, for TDIU, "[t]he question is whether the veteran is capable of performing the physical and mental acts required by employment, not whether the veteran can find employment"). Unlike the regular disability rating schedule, which is based on the average work-related impairment caused by a disability, "entitlement to TDIU is based on

an individual's particular circumstance[s]." *Rice v. Shinseki*, 22 Vet.App. 447, 452 (2009) (per curiam). "Therefore, when the Board conducts a TDIU analysis, it must take into account the individual veteran's education, training, and work history." *Pederson*, 27 Vet.App. at 286. Additionally, "although § 4.16 does not make the concept of sedentary work an explicit TDIU factor, if the Board bases its denial of TDIU in part on the conclusion that a veteran is capable of sedentary work, then [the Board] must explain how it interprets that concept in the context of that case." *Withers*, 30 Vet.App. at 148.

Whether a veteran is unable to secure or follow substantially gainful employment is a finding of fact that this Court reviews under the "clearly erroneous" standard. 38 U.S.C. § 7261(a)(4); *Bowling v. Principi*, 15 Vet.App. 1, 6 (2001). A finding of fact is clearly erroneous when the Court, after reviewing the entire evidence, "is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co*., 333 U.S. 364, 395 (1948); *see Gilbert v. Derwinski*, 1 Vet.App. 49, 52 (1990). As with any material issue of fact or law, the Board must provide a statement of the reasons or bases for its determination "adequate to enable a claimant to understand the precise basis for the Board's decision, as well as to facilitate review in this Court." *Allday v. Brown*, 7 Vet.App. 517, 527 (1995); *see* 38 U.S.C. § 7104(d)(1); *Gilbert*, 1 Vet.App. at 56-57.

In the decision on appeal, the Board summarized the evidence of record, including the 2013 and 2019 vocational assessments and the April 2016 through February 2019 VA examination reports and opinions, and concluded that the preponderance of the evidence is against entitlement to TDIU. R. at 10-16. The Board acknowledged that the appellant's service-connected disabilities impact his employability "due to physical limitations" but concluded that those limitations "are not shown to be such as to preclude all forms of substantially gainful employment" consistent with his education, intellectual skills, and experience. R. at 14-15. Rather, the Board found, based on the 2017 and 2019 VA examiners' opinions, that the appellant's disabilities "would likely preclude work in an occupation that requires significant physical labor or extensive mobility," but noted as an "example" that he would not "be precluded from participating in work that can be done sitting, with opportunity to stand as required, consistent with his college education." *Id.* To that end, the Board found that the 2019 private vocational opinion was conclusory and lacking probative value because the provider failed to explain why the appellant's education, skills, and experience would not allow for employment despite his physical limitations. R. at 15.

Here, the Court concludes that the appellant has not met his burden of demonstrating Board error. *See Hilkert v. West*, 12 Vet.App. 145, 151 (1999) (en banc) (holding that the appellant bears the burden of demonstrating error on appeal), *aff'd per curiam*, 232 F.3d 908 (Fed. Cir. 2000) (table); *see also Berger v. Brown*, 10 Vet.App. 166, 169 (1997). In that regard, the crux of his argument is that the Board failed to reconcile its "cursory conclusion" that "'it is not shown that due to his service-connected disabilities he would be precluded from participating in work that can be done sitting'" with the medical evidence demonstrating that he is "precluded from sitting." Appellant's Br. at 10-11 (quoting R. at 15); *see id*. at 7-11. However, as argued by the Secretary, the bases for the Board's denial are not as limited as the appellant suggests. Secretary's Br. at 12-13. Rather, after acknowledging the appellant's physical limitations, the Board concluded that the evidence did not show that he is unable to secure or follow "all forms of substantially gainful employment" and noted, as an example, that he would not be precluded from "work that can be done sitting, *with opportunity to stand as required*, consistent with his college education." R. at 15 (emphasis added). The appellant does not address the emphasized language in his opening brief, nor does he contend that the evidence is contrary to the Board's finding that he would be able to perform work, consistent with his education and experience, that allows for altering between sitting and standing.

Moreover, the Court concludes that the appellant's contentions that the Board failed to reconcile (1) the concept of sedentary work with his disability picture, and (2) its finding that he is capable of "substantially gainful sedentary employment" with the "plethora of medical evidence demonstrating that [he] is precluded from sitting," are undeveloped. Appellant's Br. at 11. Indeed, both contentions amount to a reframing of his initial argument, without additional analysis or factual support. *See Coker v. Nicholson*, 19 Vet.App. 439, 442 (2006) (per curiam) ("The Court requires that an appellant plead with some particularity the allegation of error so that the Court is able to review and assess the validity of the appellant's arguments."), *vacated on other grounds sub nom. Coker v. Peake*, 310 F. App'x 371 (Fed. Cir. 2008) (per curiam order); *see also Locklear v. Nicholson*, 20 Vet.App. 410, 416 (2006) (Court unable to find error when arguments are undeveloped).

Finally, the Court is not persuaded that the Board misapplied the benefit of the doubt or failed to support its conclusion that the preponderance of the evidence is against the claim. Appellant's Br. at 12-13. To the contrary, as noted above, the Board in this case summarized the

evidence of record, determined that the appellant, despite his physical limitations, is not precluded from all forms of substantially gainful employment consistent with his education, intellectual skills, and experience, and explained its reasons for discounting the 2019 vocational counselor's favorable opinion to the contrary. Although the appellant may disagree with the Board's ultimate determination, he has not demonstrated clear error or that the Board's statement of reasons or bases is inadequate to facilitate judicial review. *See Hilkert*, 12 Vet.App. at 151; *Berger*, 10 Vet.App. at 169; *see also Allday*, 7 Vet.App. at 527.

## III. CONCLUSION

The appeal of the Board's April 13, 2020, decision denying a disability rating in excess of 40% for lumbosacral spine DDD with lumbar strain is DISMISSED. After consideration of the parties' pleadings and a review of the record, the Board's decision denying TDIU is AFFIRMED.

DATED: April 19, 2021

Copies to:

Michael S. Just, Esq.

VA General Counsel (027)